1  ANDRÉ BIROTTE, JR.
   United States Attorney
2  HENRY I. LaHAIE
   Trial Attorney
3  United States Department of Justice
   Consumer Protection Branch
4  P.O. Box 386
   Washington, D.C. 20044
5  Tel. (202) 307-0053
   Fax  (202) 514-8742
6  Attorneys For Plaintiff

7  DAVID M. MIYOSHI, Esquire
   Miyoshi Law Office
8  1055 Wilshire Boulevard, Suite 1890
   Los Angeles California 90017
9  Tel. (310) 378-0615
   Fax  (301) 378-0000
10 Attorney for Defendant

11
            UNITED STATES DISTRICT COURT
12          CENTRAL DISTRICT OF CALIFORNIA

13 UNITED STATES OF AMERICA        )
                                   )   Case No.
14      Plaintiff,                 )
                                   )   CV12-02678 JFW (PZx)
15      v.                         )   CONSENT DECREE OF
                                   )   PERMANENT INJUNCTION
16 YAMAYA USA, INC., a corporation,)
   and DAIGO IRIFUNE, an individual,)
17                                 )
        Defendants.                )
18

19      IT IS HEREBY ORDERED, ADJUDGED, AND DECREED THAT:

20      1. This Court has jurisdiction over the subject matter and

21 over all parties to this action.

22      2. The Complaint for Injunction states a claim for relief

23 against the Defendants under the Federal Food, Drug, and Cosmetic

24 Act ("Act"), 21 U.S.C. § 301 et seq.

25      3. Defendants violate the Act, 21 U.S.C. § 331(a), by

26 introducing, and delivering for introduction, into interstate

27 commerce articles of food that are adulterated within the meaning

28 of 21 U.S.C. §§ 342(a)(1) or (a)(4).

4. Defendants violate the Act, 21 U.S.C. § 331(k), by causing articles of food to become adulterated within the meaning of 21 U.S.C. §§ 342(a)(1) and/or (a)(4) while such articles are held for sale after shipment of one or more ingredients in interstate commerce.

5. Upon entry of this Decree, Defendants and each and all of their agents, representatives, employees, attorneys, successors, assigns, and any and all persons in active concert or participation with any of them (including individuals, directors, corporations, subsidiaries, affiliates, and partnerships) who receive actual notice of this Decree are hereby permanently restrained and enjoined, under the provisions of 21 U.S.C. § 332(a), and the equitable authority of this Court, from directly or indirectly importing, receiving, preparing, processing, packing, labeling, holding, and distributing fish or fishery products, at or from 3420 Kashiwa Street, Torrance, California, or at or from any other locations at which Defendants, now or in the future, directly or indirectly import, receive, prepare, process, pack, label, hold, or distribute articles of food (collectively, the "Defendants' facilities"), unless and until:

A. Defendants retain, at their expense, an independent laboratory (the "laboratory") having no personal or financial ties (other than the retention agreement) to Defendants or their families, which is qualified to analyze product and environmental samples collected from within Defendants' plant for the presence of *Listeria monocytogenes* ("*L. mono*") in a method that is acceptable to the United States Food and Drug Administration

("FDA"). Defendants shall notify FDA in writing immediately upon retaining such laboratory and shall provide FDA a copy of the service contract. Such service contract shall contain certain provisions, acceptable to FDA, for regular environmental and finished product sample analysis, including the number and frequency of samples to be analyzed and the methods of analysis, in accordance with the Listeria Monitoring Program discussed in Paragraph 5(C) below;

  B. Defendants select and retain, at their expense, an independent expert(s) (the "Sanitation and Food Safety Expert") having no personal or financial ties (other than the retention agreement) to Defendants or their families, and who, by reason of background, education, training, and experience, is qualified to develop, and ensure adequate implementation of an environmental testing program for the genus *Listeria* and a written sanitation control program covering Defendants' manufacturing processes, cleaning and sanitizing operations, pest control, employee health and hygiene precautions, and plant construction and maintenance (including the plant's buildings and sanitation-related systems, equipment, utensils contained therein), to protect against contamination of food, food-contact surfaces, and food-packaging materials with chemicals, toxins, microorganisms, vermin and filth. The Sanitation and Food Safety Expert shall also be qualified to inspect Defendants' plant and to determine whether the methods, facilities, and controls are operated and administered in conformity with the Act and 21 C.F.R. Part 110. Defendants, if they choose, may retain as the Sanitation and Food Safety Expert the same independent party they retain as the HACCP

Expert, described in Paragraph 5(F) below. Defendants shall notify FDA in writing of the name(s) and qualifications of the Sanitation and Food Safety Expert as soon as they retain such expert(s);

  C. Defendants' Sanitation and Food Safety Expert, in consultation with the laboratory, after review of all FDA and California Department of Public Health ("CDPH") observations from September 2002 to present, develop a written Listeria Monitoring Program, acceptable to FDA, which shall include, at a minimum, the following:

    1. An effective written sanitation control program that establishes adequate methods, facilities, and controls for receiving, processing, preparing, packing, holding, and distributing articles of food to minimize the risk of introduction of *L. mono* into Defendants' food, and to ensure that food is not adulterated, within the meaning of 21 U.S.C. § 342(a). Such methods, facilities, and controls shall include, but shall not be limited to, thoroughly cleaning, sanitizing, renovating, and rendering Defendants' plant and all equipment therein suitable for use in receiving, processing, preparing, packing, holding, and distributing articles of food to prevent the articles of food from becoming adulterated, and instituting procedures to ensure that the plant and equipment therein are continuously maintained in a sanitary condition;

    2. A written employee training program (in English and the native language of all employees) that includes, at a minimum, instruction on sanitary food handling techniques and documentation that each employee has received such training.

Defendants shall be required to conduct this training program before resuming operations pursuant to Paragraph 5(M) of this Decree and no less frequently than once every six months thereafter for a period of three years following the entry of this Decree;

      3. Adequate methods, facilities, and controls for *L. mono*. Such methods shall include an effective program of environmental monitoring and testing of the plant, conducted by the laboratory, to ensure that Listeria species are controlled, and *L. mono* is not present, within the plant. Environmental monitoring shall include, but not be limited to, collecting swab samples from food-contact surfaces, equipment, and other environmental sites throughout the facility (where the raw ingredients, in-process, and finished articles of foods are received, processed, prepared, packed, held, and/or distributed, and common areas that could be reservoirs for cross-contamination), and analysis of collected samples, in a manner acceptable to FDA. Defendants shall ensure that the results of all analyses conducted pursuant to this paragraph are sent to FDA within two (2) calendar days of receipt by Defendants;

      4. A plan for appropriate corrective action when any deviation from the Listeria Monitoring Program occurs or when any pathogenic organism has been detected through product or environmental testing. The corrective action plan shall, at a minimum, establish procedures to address the root cause of the problem and ensure that adulterated product shall not enter commerce. In the event a pathogenic organism is detected, the

corrective action plan shall ensure that Defendants immediately report the finding to FDA;

   5. An assignment of continuing responsibility for the operation of the Listeria Monitoring Program to a person or persons who, by reason of background, experience, or education, are competent to maintain the plant in a sanitary condition, coordinate with the laboratory, and implement any necessary remedial action(s), and providing such person(s) with the authority to achieve the necessary corrections;

   6. A record keeping system that documents the extent to which the Listeria Monitoring Program is implemented and any corrective actions taken in response; and

   7. Defendants make versions of the Listeria Monitoring Program available and accessible to all their employees in both English and the native language of all employees;

  D. Defendants thoroughly clean, renovate, and render the facility and all equipment therein sanitary and fit for use in manufacturing, preparing, packaging, holding, and distributing articles of food, and have in place adequate procedures to ensure that the facility and all equipment therein are maintained continuously in such condition;

  E. The Sanitation and Food Safety Expert conducts a comprehensive inspection of Defendants' plant and the methods and controls used to receive, process, prepare, pack, hold, and distribute foods to determine whether Defendants have effectively implemented all necessary changes and are operating in compliance with this Decree, the Act, and 21 C.F.R. Part 110. The

Sanitation and Food Safety Expert shall submit his/her findings to Defendants and FDA concurrently, within ten (10) business days of completion of the inspection;

  F. Defendants have retained a person(s) ("HACCP Expert") who is without any personal or financial ties (other than the consulting agreement) to Defendants or their families, and who by reason of background, experience, and education, is qualified to:

    1. Conduct hazard analyses and to develop adequate written hazard analysis critical control point ("HACCP") plans for the processing of fish products and fishery products, as required by 21 C.F.R. § 123.6(a)-(c);

    2. Verify the adequacy of HACCP plans, as required by 21 C.F.R. § 123.8;

    3. Establish an adequate system for importer verification, as required by 21 C.F.R. § 123.12; and

    4. Develop and conduct employee training programs on seafood HACCP, sanitation controls in seafood processing, and control strategies.

Defendants, if they choose, may retain as the HACCP Expert the same independent party they retain as the Sanitation and Food Safety Expert, described in Paragraph 5(B) above. Defendants shall notify FDA in writing of the name(s) and qualifications of the HACCP Expert(s) as soon as they retain such expert(s);

  G. The HACCP Expert has:

    1. Developed adequate, written HACCP plans for each type of fish and fishery product processed, prepared, packed, held, and distributed by Defendants, as required by 21 C.F.R. § 123.6. These HACCP plans shall, at a minimum, include

effective critical control points, critical limits, monitoring procedures, corrective actions and verification procedures for the hazard of pathogen growth during storage and processing as well as effective controls for the growth of *Clostridium botulinum* and toxin formation;

    2. Developed written corrective action plans, as part of the HACCP plans, to be followed whenever there is a deviation from a critical limit, as described in 21 C.F.R. § 123.7(b);

    3. Verified that all Defendants' HACCP plans are adequate to control all food safety hazards that are reasonably likely to occur in Defendants' facility, as required by 21 C.F.R. § 123.8. The critical limits in Defendants' HACCP plans shall be supported by scientific studies;

    4. Established an adequate system for importer verification, as required by 21 C.F.R. § 123.12; and

    5. Developed and implemented an employee training program to include, at a minimum, training in seafood HACCP, sanitation controls in seafood processing, and control strategies specific to Defendants' HACCP plans. Defendants shall be required to conduct this training program before resuming operations pursuant to Paragraph 5(M) of this Decree and no less frequently than once every six months thereafter for a period of three years following the entry of this Decree;

    H. Defendants shall develop a record keeping system, as required by 21 C.F.R. §§ 123.6(c)(7), 123.7(d), 123.8(d), and 123.11(c).

  I. Defendants shall destroy, under FDA supervision, all in-process and finished articles of food currently in their custody, control, or possession. For purposes of this subparagraph, raw ingredients will not be deemed to be in-process if they have remained unopened in their original packaging and if Defendants establish to FDA's satisfaction that they have been held under appropriate temperature controls since receipt;

  J. Defendants report to FDA in writing the actions they have taken to bring their operations into compliance with the Act and all applicable regulations, including:

   1. Documentation that they have cleaned and sanitized their facility and have received laboratory results showing that *L. mono* is no longer present in the facility;

   2. Specific measures that they have taken to address each of the violations documented by FDA and CDPH since September 2002;

   3. A copy of the Listeria Monitoring Program for FDA's written approval;

   4. The HACCP plans described in Paragraph 5(G)(1) and (2) for FDA's written approval. FDA may request more information about any scientific studies described in Paragraph 5(G)(3) supporting the adequacy of the critical limits in the HACCP plans; and

   5. The employee training programs described in Paragraphs 5(C)(2) and 5(G)(5) for FDA's written approval;

  K. FDA, as and when it deems necessary, has inspected Defendants' facilities, including all records relating to the processing, preparing, packing, holding, and distribution of fish

products. The costs of FDA inspections conducted pursuant to this paragraph (including sampling, testing, travel, document preparation and review time, and subsistence expenses) shall be borne by Defendants at the rates specified in Paragraph 13 of this Decree;

    L. Defendants pay the costs of any supervision, inspection, analyses, examination, and review that FDA deems necessary to evaluate the Defendants' compliance with the terms of this paragraph; and

    M. Defendants receive written notification from FDA (i) stating that Defendants appear to be in compliance with the Act, all applicable regulations, and this Decree, and (ii) authorizing Defendants to resume (a) receiving at the facility articles of food in interstate commerce, and (b) introducing, delivering for introduction, and causing the introduction or delivery for introduction into commerce of articles of food manufactured, prepared, packaged, held, or distributed at the facility.

6. Upon resuming operations after completing the requirements of Paragraph 5, Defendants shall continuously implement the following steps to prevent further *L. mono* contamination of their food products and facility and to prevent further violations of the Act:

    A. Effectively implement, on a continuous basis, the Listeria Monitoring Program developed pursuant to Paragraph 5(C), unless Defendants submit, and FDA approves in writing, an alternative *L. mono* control program, consisting of validated methods and controls that are shown to FDA's satisfaction to eliminate *L. mono* in food. In the event that Defendants, their

Sanitation and Food Safety Expert, or laboratory, determines that the Listeria Monitoring Program needs to be revised, Defendants shall provide suggested changes to FDA in writing at least twenty (20) days prior to their implementation, and shall not implement their suggested changes until FDA approves those changes in writing.

  B. Conduct finished product testing in the following manner:

    1. Immediately upon resumption of operations after the completion of the requirements of Paragraph 5, Defendants shall test for *L. mono* in all lots of each food product for at least five consecutive production days using a testing method acceptable to FDA;

    2. After the completion of testing under Paragraph 6(B)(1), Defendants shall test at least one lot of each food product per day for the next twenty (20) production days;

    3. After the completion of testing under Paragraph 6(B)(2), Defendants shall test at least one lot of each food product per every five (5) production days for the next three (3) months; and

    4. After the completion of testing under Paragraph 6(B)(3), Defendants shall test at least one lot of each food product per quarter thereafter. Defendants shall ensure that the results of all analyses conducted pursuant to Paragraph 6(B) are sent to FDA within two (2) calendar days of receipt by Defendants. If any laboratory test completed pursuant to Paragraphs 6(B)(1)-(4) shows the presence of *L. mono* in any article of food, then Defendants shall immediately cease

production until they have determined and corrected the cause of the microbial contamination. Once the cause of the contamination has been corrected, Defendants shall reinstate the complete sequence of testing under this paragraph anew.

    C. Continuously implement the HACCP plans and employee training program referred to in Paragraph 5(G) and the record keeping system referred to in Paragraph 5(H). Defendants shall maintain copies of their HACCP plans, employee training program, and record keeping system in a location where they are readily available for reference and inspection by FDA officials. All records required to be kept by the HACCP plans and by FDA regulations shall be retained for at least three (3) years after the date the records are prepared.

7. If, after notifying FDA of the name of the laboratory retained to conduct sample collection and analysis pursuant to Paragraph 5(A), Defendants terminate or alter their service contract with the laboratory in any way, Defendants shall notify FDA within five (5) business days. If Defendants contract with a new laboratory for collection and analysis services, Defendants shall provide a copy of the new service contract to FDA within five (5) business days of execution.

8. Within thirty (30) calendar days after Defendants have complied with Paragraph 5(A)-(L) and FDA has notified the firm in writing pursuant to Paragraph 5(M):

    A. Defendants shall retain an independent person or persons (the "Auditor") to conduct audit inspections of its facilities not less than once every three months for a period of three years and not less than once every twelve months for a

period of two years thereafter, for a total of five years of auditing. The Auditor shall be qualified by education, training, and experience to conduct such inspections, and shall be without personal or financial ties (other than the consulting agreement entered into by the parties) to any Principal officer or employee or their immediate families. The Auditor may, if Defendants choose, be the same person(s) described as the Sanitation and Food Safety Expert or the HACCP Expert in Paragraph 5.

B. During each audit inspection, the Auditor shall evaluate whether Defendants are in compliance with the Act and applicable regulations, including, but not limited to, whether Defendants adequately implement HACCP plans and employees follow proper sanitation procedures.

C. At the conclusion of each audit inspection, the Auditor shall prepare a written audit report (the "Audit Report") identifying in detail any deviations from the Act, applicable regulations, and this Decree ("Audit Report Observations"). As part of every Audit Report, except the first, the Auditor shall assess the adequacy of corrective actions taken by Defendants to correct all previous Audit Report Observations. The Audit Reports shall be delivered contemporaneously to Defendants and FDA by courier service or overnight delivery service, no later than ten (10) calendar days after the date each audit inspection is completed. If an Audit Report contains any Audit Report Observations, FDA may, in its discretion, require that the three year auditing cycle be extended or begin anew. In addition, Defendants shall maintain the complete Audit Reports and all of their underlying data in separate files at their facility and

shall make the Audit Reports and underlying data available to FDA upon request.

D. If an Audit Report contains any Audit Report Observations, Defendants shall, within ten (10) calendar days of receipt of the Audit Report, correct those observations, unless FDA notifies Defendants that a shorter time period is necessary. If, after receiving the Audit Report, Defendants believe that correction of an Audit Report Observation will take longer than ten (10) calendar days, Defendants shall, within seven (7) calendar days of receipt of the Audit Report, propose a schedule for completing corrections ("Correction Schedule") and provide justification for the additional time. Any Correction Schedule must be reviewed and approved by FDA in writing prior to implementation. Defendants shall complete all corrections according to the approved Correction Schedule. Within thirty (30) calendar days of Defendants' receipt of an Audit Report, or within the time period provided in a Correction Schedule approved by FDA, the Auditor shall review the actions taken by Defendants to correct the Audit Report Observations. Within ten (10) calendar days of the beginning of that review, the Auditor shall report in writing to FDA and Defendants whether each of the Audit Report Observations has been corrected.

9. If, at any time after entry of this Decree, FDA determines, based on the results of an inspection, sample analysis, the Expert(s)' or Auditor's reports, or other information, that Defendants have failed to comply with any provision of this Decree, have violated the Act or applicable regulations, or that additional corrective actions are necessary

corrective action taken and, if appropriate, its schedule for completion.

10. Any cessation of operations described in Paragraph 9 shall continue until Defendants receive written notification from FDA that Defendants appear to be in compliance with the Act, its implementing regulations, and this Decree. The costs of FDA inspections, sampling, testing, travel time, and subsistence expenses to implement the remedies set forth in Paragraph 9 shall be borne by Defendants at the rates specified in Paragraph 13.

11. Upon entry of this Decree, Defendants and each and all of their officers, directors, agents, representatives, employees, successors, assigns, attorneys, and any and all persons in active concert or participation with any of them (including individuals, directors, corporations, subsidiaries, affiliates, and partnerships) who receive actual notice of the Decree, are permanently restrained and enjoined under 21 U.S.C. § 332(a) from doing or causing to be done, directly or indirectly, any act that violates (a) 21 U.S.C. § 331(a), by introducing or delivering for introduction into interstate commerce any food that is adulterated within the meaning of 21 U.S.C. § 342; or (b) 21 U.S.C. § 331(k), by causing food to become adulterated within the meaning of 21 U.S.C. § 342, while held for sale after shipment in interstate commerce.

12. Representatives of FDA shall be permitted, without prior notice and as and when FDA deems necessary, to make inspections of any of Defendants' facilities, and, without prior notice, take any other measures necessary to monitor and ensure continuing compliance with the terms of this Decree. During such

inspections, FDA representatives shall be permitted access to buildings, equipment, articles of food, containers, labeling, and packaging material(s) therein; to take photographs and make video recordings; to take samples of Defendants' articles of food, containers, labeling, and packaging material(s); to examine and copy all records relating to the receipt, manufacture, preparing, packing, labeling, holding, and distribution of any and all articles of food, and the sanitation of the facility. The inspections shall be permitted upon presenting a copy of this Decree and appropriate credentials. The inspection authority granted by this Decree is separate from, and in addition to, the authority to make inspections under the Act, 21 U.S.C. § 374.

13. Within ten (10) calendar days of receiving notice from FDA, Defendants shall reimburse the Plaintiff for costs associated with any inspections, examinations, reviews, evaluations, or analyses conducted pursuant to this Decree, including the costs of supervising Claimant's destruction of the Articles, at the standard rates prevailing at the time the activities are accomplished. As of the date this Decree is signed by the parties, the rates are $87.57 per hour or fraction thereof per representative for time spent on supervision other than laboratory and analytical work; $104.96 per hour or fraction thereof per representative for laboratory and analytical work; and 51 cents per mile for travel expenses. In the event that the standard rates generally applicable to FDA's supervision of court-ordered compliance are modified, these rates shall be increased or decreased without further order of this Court.

14. Defendants shall abide by the decisions of FDA, and FDA's decisions shall be final. All decisions conferred upon FDA in this Decree shall be vested in FDA's discretion and, if contested, shall be reviewed by this Court under the arbitrary and capricious standard set forth in 5 U.S.C. § 706(2)(A). Review by the Court of any FDA decision rendered pursuant to this Decree shall be based exclusively on the written record before FDA at the time the decision was made. No discovery shall be taken by either party.

15. Defendants shall provide a copy of this Decree, personally or, when necessary, by registered mail, within ten (10) calendar days from the date of entry of the Decree by this Court, to each of their officers, directors, agents, representatives, employees, successors, assigns, attorneys, and any and all persons in active concert or participation with any of them (including individuals, directors, corporations, subsidiaries, affiliates, and partnerships). Defendants shall also post a copy of this Decree in the employee common areas at each of Defendants' facilities for no less than twelve (12) months. Within twenty (20) calendar days of the date of entry of this Decree, Defendants shall provide to FDA an affidavit of compliance, stating the facts and manner of compliance with the provisions of this paragraph.

16. Upon entry of the Decree, Defendants shall provide a copy of the Decree, by personal service or by registered mail, to each of its new employees within ten (10) calendar days of hire.

17. Defendants shall notify FDA in writing at least thirty (30) calendar days before any subsequent change in location,

ownership, or character of the business, such as reorganization, dissolution, assignment, or sale resulting in the emergence of a successor corporation or business entity, the creation or dissolution of subsidiaries, or any other change in the corporate or business structure of any newly-formed business entity (including any "doing business as" entity) over which Defendants have any authority, or the sale or assignment of any business assets, such as buildings, equipment, or inventory, that may affect compliance with this Decree. Defendants shall provide a copy of this Decree to any potential successor or assignee at least thirty (30) calendar days prior to the assignment or change in ownership. Defendants shall furnish FDA with an affidavit of compliance with this paragraph at least thirty (30) calendar days prior to such assignment or change in ownership.

18. If Defendants fail to comply with any provision of the Act or its implementing regulations, or any provision of this Decree, then Defendants shall pay to the United States of America: five thousand dollars ($5,000) in liquidated damages for each day such violation continues; an additional sum of one thousand dollars ($1,000) in liquidated damages for each violation of the Act, its implementing regulations, and/or this Decree; and an additional sum in liquidated damages equal to twice the retail value of any shipments of adulterated food. The remedy in this paragraph shall be in addition to any other remedies available to the Plaintiff under this Decree or the law. Defendants understand and agree that the liquidated damages specified in this paragraph are not punitive in nature and their imposition does not in any way limit the ability of the United

States to seek, and the Court to impose, additional criminal or civil penalties based on conduct that may also be the basis for payment of the liquidated damages.

19. Should the Plaintiff bring, and prevail in, a contempt action to enforce the terms of this Decree, Defendants shall, in addition to other remedies, reimburse the Plaintiff for its attorneys' fees, travel expenses incurred by attorneys and witnesses, court costs, expert witness fees, and investigational and analytical expenses incurred in bringing such an action.

20. All notifications, correspondence, and communications to FDA required by the terms of this Decree shall be addressed to:

    District Director
    Los Angeles District Office
    U.S. Food and Drug Administration
    HFR-PA200
    19701 Fairchild
    Irvine, CA 92612

21. This Court retains jurisdiction to issue such further decrees and orders as may be necessary to the proper disposition of this proceeding.

SO ORDERED

Dated this __5__ day of __April__, 2012

_____
United States District Judge

We hereby consent to entry of the forgoing Consent Decree:

Defendants:

*(signature)*

DAIGO IRIFUNE
Individually and as President
of Yamaya USA, Inc.

*(signature)*

DAVID M. MIYOSHI, Esquire
1055 Wilshire Blvd., Suite 1890
Los Angeles California 90017
Tel. (310) 378-0615
Fax  (301) 378-0000
Attorney for Yamaya USA, Inc.
and the individual defendants

Plaintiff:
ANDRÉ BIROTTE, JR.
United States Attorney

By:

*(signature)*

HENRY L. LaHAIE
Trial Attorney
Consumer Protection Branch
U.S. Department of Justice
P.O. Box 386
Washington, DC 20044
Tel: 202-307-0053

Of Counsel:

WILLIAM B. SCHULTZ
Acting General Counsel

ELIZABETH H. DICKINSON
Acting Chief Counsel
Food and Drug Division

ERIC M. BLUMBERG
Deputy Chief Counsel for
Litigation

MICHAEL D. HELBING
Trial Attorney
U.S. Dept. of Health & Human
     Services
Office of General Counsel
10903 New Hampshire Avenue
WO31-4570
Silver Spring, Maryland 20993

Attorneys for the United States
of America